Pfeifer, J.,
dissenting.
{¶ 42} I dissent and would affirm the decision of the court of appeals. This appeal emanates from a motion to dismiss brought pursuant to Civ.R. 12(B)(6). The majority inappropriately relies on facts and inferences not in the complaint in arriving at its decision, holding in favor of the appellants upon a basis none of them raised in their appeals to this court.
{¶ 43} A trial court may not rely on allegations or evidence outside the complaint in considering motions for dismissal brought pursuant to Civ.R. 12(B)(6). State ex rel. Fuqua v. Alexander (1997), 79 Ohio St.3d 206, 207, 680 N.E.2d 985. The trial court, reviewing the complaint and nothing else, may dismiss the case only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recover. O’Brien v. Univ. Community Tenants Union, Inc. (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. The court must presume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.
{¶ 44} The trial court in this case did not decide this case on the basis of the expiration of the statute of limitations. None of the parties has raised in a *198 proposition of law that the claims against “Uncle Bud” Koons should be decided in their favor because the statute of limitations for claims against Uncle Bud had begun to run in 1984. The majority develops that argument itself.
{¶ 45} I do agree with the majority that the limitations period for claims relating to Uncle Bud began to run when the plaintiffs knew or should have known that Uncle Bud had committed fraud. The majority cites Professor Bogert’s statement that “[i]f the trustee violates one or more of his obligations to the beneficiary * * *, there obviously is a cause of action in favor of the beneficiary and any relevant Statute of Limitations will apply from the date when the beneficiary knew of the breach or repudiation, or by the exercise of reasonable skill and diligence should have learned of it.” True enough.
{¶ 46} But Professor Bogert did not read the complaint here. Keeping in mind that we must draw all inferences in favor of the plaintiffs, the complaint does not establish that the plaintiffs knew in 1984 that Uncle Bud had committed fraud. The majority says that in 1984 “the beneficiaries were aware of the price paid for Miller’s shares of stock.” If they were aware, they did not so state in the complaint. If it is true that the plaintiffs knew the purchase price of Miller’s shares, neither the majority nor the complaint tells us how many shares Miller held. Is it not possible that Miller’s fewer shares might garner more per share than the 10,077 shares held by the Cundalls’ portion of the trust? Is it not possible that Miller’s shares had a higher nuisance value than market value?
{¶ 47} Here is what is in the complaint: The plaintiffs plainly allege that they were misled as to the value of the stock, that both U.S. Bank and Uncle Bud had concealed its true value. The plaintiffs learned in 2005 that CIC was sold for $400 million, which led them to finally learn what Uncle Bud may have been up to.
{¶ 48} Nothing in the complaint indicates that the plaintiffs should have known that Uncle Bud would seek to loot their portion of the trust. True, the plaintiffs allege coercion by Uncle Bud, but they could well have believed that he was pressuring them to sell their shares for the good of the trust. As CEO of CIC, he would be in a position to know the right time to sell. And U.S. Bank backed Uncle Bud up as to the value of the stock.
{¶ 49} Most preposterously, the majority states that the complaint’s use of the word “transparent” to characterize Uncle Bud’s subterfuge means that the subterfuge was obvious when it occurred. The majority uses the complaint’s “third-person omniscient” point of view against the plaintiffs. But the complaint does not allege that the subterfuge was transparent to the plaintiffs at the time it happened; it alleges that looking back, Uncle Bud’s subterfuge was transparent.
{¶ 50} Now, I am in no way convinced that the plaintiffs would ultimately be able to prove a valid claim. I am not convinced that the stock price paid in 1984 *199 for CIC, a Pepsi bottler, was unfair. Much has happened in the “Cola Wars” since then, and a lot of carbonated water has gone under the bridge. We have seen the advent of Diet Pepsi, Pepsi Free, Crystal Pepsi, Pepsi AM, Pepsi Blue, Pepsi Holiday Spice, Pepsi Lime, Pepsi Raging Razzberry, Pepsi Twist, Pepsi One, and Pepsi Jazz. A generation has passed. Moreover, the value of a share of stock in numerous companies could have made amazing leaps from 1984 to 2005.
The Ward Law Firm, L.L.C., and Richard G. Ward, for appellee Richard K. Cundall, individually and as successor trustee.
Helmer, Martins, Rice & Popham Co., L.P.A., James B. Helmer Jr., Julie W. Popham, Robert M. Rice, and Erin M. Campbell, for appellants Richard W. Caudill, Keven E. Shell, William P. Martin II, G. Jack Donson Jr., Michael Caudill, and D. Scott Elliot, Trustees.
Beckman Weil Shepardson, LLC, Peter L. Cassady, and Brian G. Dershaw, for appellants Deborah Koons Garcia, John F. Koons IV, James B. Koons, Caroline M. Koons, Kathleen M. Koons, Maura L. Koons, Jeremy B. Koons, and Morgan N. Koons.
Ulmer & Berne, L.L.P., Donald J. Mooney Jr., and Pamela A. Ginsburg, for appellants Christina Koons, Nicholas Koons Baker, and Carson Nye Koons Baker.
William H. Blessing, for appellees Michael K. Cundall Jr., Courtney Fletcher Cundall, and Hillary Cundall.
{¶ 51} Be that as it may, the majority has ignored that this case is in this court due to the trial court’s granting of a Civ.R. 12(B)(6) motion to dismiss. It ignores our jurisprudence regarding the deference to be given to nonmoving parties in ruling on motions to dismiss. This case may be appropriate for summary judgment one day, but if one looks at the complaint and draws all reasonable inferences in the favor of the plaintiffs, one cannot conclude that the plaintiffs knew in 1984 that Uncle Bud had committed fraud. Yes, today’s result nips in the bud a lawsuit that could become a real-life Jamdyce and Jamdyce, but that is no reason to artificially end the case now. We do our jurisprudence no favors by ending a bad lawsuit in a way that is contrary to law. The majority liberally cites Professor Bogert in its opinion. I think “Professor” Bogart is more applicable here: “Things are never so bad they can’t be made worse.”